[No. 1607. Decided August 16, 1895.]

LEWIS M. HAMILTON, *Respondent, v.* H. H. CARTER *et al., Appellants.*

JUDICIAL SALE — PURCHASE OF MORTGAGED CHATTELS — ESTOPPEL OF MORTGAGEE — LIABILITY OF SHERIFF FOR ACTS OF DEPUTY — FORE-CLOSURE — LACHES.

One who purchases, at an execution sale, personal property which is subject to a chattel mortgage of which he has notice, acquires no title therein prejudicial to the interests of the mortgagee.

The fact that the mortgagee of personal property stands by at the time of its sale on execution to satisfy a judgment of a third person

and makes no objection to the representation of the sheriff to the purchaser at the execution sale, that the proceeds would be applied in satisfaction of the mortgage, will not estop the mortgagee from subsequently enforcing his lien on the property, when the proceeds of the sale were paid into court for the use of the execution creditor and were not applied in satisfaction of the mortgage.

The promise of the sheriff to apply the proceeds of an execution sale upon one judgment to the satisfaction of another judgment is illegal and cannot be enforced by the courts.

A sheriff is not bound by the false representations of his deputy made outside the scope of his official duties, and anyone misled thereby to his injury, must look to the deputy and not to the sheriff for redress.

The withholding of an order of sale upon a decree of foreclosure of a chattel mortgage for a period of five months does not constitute laches.

*Appeal from Superior Court, Chehalis County.*

*Austin E. Griffiths,* and *J. B. Bridges,* for appellants.
*M. J. Cochran,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—The firm of Ninemire & Morgan recovered a judgment in the superior court of Chehalis county againts one J. F. Hiatt, and caused an execution to be issued thereon and placed in the hands of the defendant Carter, who was then sheriff of said county. In pursuance of the writ, one Geissler, who was deputy sheriff, seized, advertised and, on November 9, 1891, sold certain personal property belonging to the defendant Hiatt, to the respondent Hamilton, for the sum of $425. At, and prior to, the execution sale, defendant Holloway held a chattel mortgage on the property sold, which he had caused to be foreclosed, the decree of foreclosure having been rendered two days prior to the sale.

It appears from the complaint herein that Hamilton was apprised of the existence of this mortgage when

he bid in the property, and the sheriff and his deputy were also aware of it. But it seems that both Hamilton and Holloway understood that the mortgage would be satisfied out of the proceeds of the sale. On November 30th the deputy sheriff paid the money received from Hamilton, and returned the execution with his doings thereon, to the clerk of the court. On December 5th following, the court ordered the clerk to pay this money to the execution plaintiffs in part satisfaction of their judgment. Whether Hamilton or Holloway was cognizant of this order does not appear from the evidence. In April, 1892, Holloway caused an order of sale to be issued upon his judgment and decree of foreclosure, and delivered to the sheriff. The sheriff, in pursuance thereof, was about to sell the mortgaged property, when Hamilton instituted this action against him and Holloway to enjoin the proceeding.

It is alleged in the complaint, among other things, in substance, that at the execution sale the sheriff refused to accept any bid less than $425, the amount supposed to be necessary to satisfy the mortgage lien, and that plaintiff was induced to bid and pay that sum for the property by the representation of the sheriff that it would be applied in satisfaction of said mortgage lien; that Holloway was present and heard said representation and assented thereto; that afterwards, and for the purpose of injuring and defrauding plaintiff, the sheriff refused to apply the money so paid to the satisfaction of said mortgage, but returned upon the execution that he sold all the right, title and interest of Hiatt in and to the property, subject to a mortgage in favor of A. B. Holloway for the sum of $300 and costs; that the return was so made to injure and defraud plaintiff, and was false; that since the plain-

tiff paid over to the said sheriff the said sum of $425,
the defendant Holloway has caused an order of sale to
issue out of the superior court, commanding the said
sheriff to sell all of the property so sold to plaintiff,
and that, in pursuance of said order of sale, the sheriff
threatens and is about to sell the whole of said prop-
erty, to the plaintiff's lasting injury and damage in
the sum of $500; and that unless the sheriff and his
co-defendant be restrained from further action under
said order of sale, the plaintiff will suffer great and
irreparable injury.

The defendants demurred to the complaint upon the
grounds, among others, that it failed to state facts suf-
ficient to constitute a cause of action, and that there
was a defect of parties defendant.    The court over-
ruled the demurrer, and the defendants excepted.
Carter then answered, denying the representations
alleged in the complaint, and affirmatively averred
that, prior to the date of the sale, Holloway had a
mortgage lien upon said property, and that the goods
were purchased by Hamilton at said sale subject to the
lien of said mortgage, and that Hamilton had bought
other property from Hiatt, the mortgagor, subject to
the same mortgage, and had agreed with Hiatt to pay
Holloway sufficient of the purchase price to satisfy
said mortgage.  Holloway separately answered and like-
wise denied the alleged representations of the sheriff,
and alleged that Hamilton bought this and other prop-
erty without his procurement or consent and subject
to his mortgage, and that before the sale he told Ham-
ilton not to buy the property unless he paid the mort-
gage, and that Hamilton bought other property from
Hiatt, agreeing to pay the mortgage with part of the
purchase price, but had failed so to do; and further
alleging that if the injunction be granted he, Holloway,

33—12 WASH.

would never recover any money due him from Hiatt under said decree, and prayed judgment against plaintiff for dissolution of the preliminary injunction, dismissal of the complaint and for damages and costs of the action. The plaintiff's reply was a general denial of the affirmative allegations of both answers.

Upon these pleadings and issues the cause was tried by the court. Findings of fact and conclusions of law were made and filed, and a decree rendered thereon perpetually enjoining both Carter and Holloway from enforcing the decree and order of sale; that Carter amend the return upon the execution to show that at the sale the property was sold for $425, and this sum was received by him as sheriff to apply to the discharge of the decree in the Holloway cause, and that said sum be a trust fund with which to satisfy in full the decree in favor of Holloway, and that within ten days Carter pay said sum into court with legal interest from date of sale to satisfy said decree, and in case of failure that execution issue therefor in favor of Holloway, and that plaintiff and defendant Holloway severally recover their costs from Carter, and that execution issue therefor. The defendant Carter gave written notice of appeal from the judgment and decree of the court and every part thereof, and afterwards Holloway joined in his appeal.

After a careful consideration of the facts in this case and the law applicable thereto, we are unable to discover any grounds upon which the judgment and decree can be sustained. The complaint seems to have been framed on the theory that the plaintiff purchased at the execution sale the entire and exclusive property in the goods, instead of the mere interest of the execution defendant. But this theory is contrary to law and therefore entirely indefensible. The statute

provides that the interest of the mortgagor may be seized and sold, subject, however, to the mortgage. Gen. Stat., § 1659. And generally, when a purchaser at an execution sale buys property which he knows is subject to a legal or equitable claim of a third person, the title he acquires is without prejudice to such claim. In speaking of the rights of purchasers in cases like this, Mr. Freeman lays down the law as follows:

" But a purchaser at a sale under a judgment is, to the same extent as if he were purchaser at a private or voluntary sale, protected from claims previously acquired by third persons from the judgment debtor, of which he has no actual nor constructive notice. But if, at the time of the sale, the purchaser has actual notice of any legal or equitable right in a third person, or if, in the absence of such notice, the instrument evidencing such right is properly of record, or if possession is held under it, then the title acquired by the purchaser cannot prejudice the interests of such third person." 2 Freeman, Executions (2d ed.), § 336.

The court below must have deemed this an exceptional case, for its conclusion is at variance with the rule above stated. It found as facts that the sheriff, at the time of the execution sale, represented to plaintiff Hamilton that his bid of $425 should, so far as the same was necessary, be applied to the satisfaction and discharge of the decree of foreclosure, that he refused to so apply it, but applied it to the satisfaction of the judgment of Ninemire & Morgan, and in his return made it appear that he had sold the property subject to Hamilton's lien, and that Holloway was present, heard the aforesaid representation, and made no objection thereto. But even upon that state of facts it is difficult to understand why Holloway should receive nothing upon his judgment and decree, or why the sheriff should be restrained from executing the order

of sale in the foreclosure proceedings. If the sheriff agreed to pay off and discharge Holloway's judgment with the proceeds of the sale of the very property upon which Holloway relied for security, why should Holloway have objected to the sale? All he desired was payment, and it made no difference to him whether Ninemire & Morgan sold the property and paid him, or whether he sold it himself, as he had a right to do under his decree of foreclosure, in satisfaction of his claim. Moreover, Holloway had no right to object to the sale of Hiatt's interest, for the law gave Ninemire & Morgan the right to sell that upon their execution; and there is no evidence that Holloway ever intended for a moment to relinquish his lien without payment of his claim. He even testifies that he notified Hamilton's agent not to buy the property unless he paid off the mortgage, and there is no evidence disputing him.

Under these circumstances, to say that because he did not further object to the sale he thereby forever relinquished his lien, would be to extend the doctrine of estoppel by acquiescence beyond the limits of justice, equity or reason. Valid liens should not be thus lightly set aside. If Hamilton expected that Holloway's mortgage would be paid out of the sum bid by him, why did he not make some effort to have it so applied? He says he relied upon the undertaking or representation of the sheriff, but he ought to have known, and is presumed to have known, that the sheriff, under the law, could not receive money on an execution in one case and pay it out in satisfaction of a judgment in another case with which he at the time had nothing whatever to do. The order of sale was not in his hands at that time, and he would have been guilty of official misconduct, if he had made such an application of the funds. The law required him to

pay it to the clerk of the court, and he did so and returned the execution accordingly.    Code Proc. §§ 467, 469, 507.

Although he did all the law required him to do, he is nevertheless commanded by the decree of the court to pay a sum of money which is not in his possession, or under his control, and which he has no means of recovering, to his co-defendant, Holloway, who did not ask for, and is not entitled to, any such relief.    We are aware of no power or authority in the courts to compel a sheriff, or any other person, to do that which is contrary to law, even if he may have promised to perform the illegal act.

But the fact is, the evidence does not show that the sheriff himself ever represented to the respondent that the proceeds of the sale would be applied to the discharge of the Holloway decree and lien.    If any such representations were made at all they were made by the deputy sheriff, and were not part of his official acts or duties, and amounted to a personal engagement on his part for which the sheriff was in no way responsible. If the respondent is in such a position that he can show that he was damaged by the representation of the deputy, he must look to him for indemnity, and not to the sheriff. *Marshall v. Hosmer,* 4 Mass. 60; *Waterhouse v. Waite,* 11 Mass. 207; *Tobey v. Leonard,* 15 Mass. 200; 5 Am. & Eng. Enc. Law, p. 635, note 1.

It is said, however, that appellant Holloway was guilty of such laches in withholding his order of sale for a period of five months, that it would now be inequitable to permit him to avail himself of it.    But we fail to see any force in this suggestion.    Our statute provides that execution may issue on a judgment of a court of record at any time, provided that after the lapse of five years the judgment must first be revived

in the manner provided by law. Code Proc., § 464. An order of sale is, in effect, merely an execution. How, then, can it be said that such an order shall be of no effect or validity simply because, in the opinion of some one, it might, or ought to, have been issued at an earlier date? There is manifestly no merit in such a proposition.

Upon the case made by the pleadings and proofs, it appears clear to us that the respondent is entitled to no relief in this action.

The judgment will therefore be reversed and the cause remanded with instructions to dismiss the complaint.

HOYT, C. J., and SCOTT, DUNBAR and GORDON, JJ., concur.